PUBLIC SERVICE COMPANY OF INDIANA, INC. *v.*
KNOX COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION.

[No. 2-874A199. Filed September 9, 1976. Rehearing denied October 19, 1976. Transfer denied March 30, 1977.]

*Duejean C. Garrett, Greg K. Kimberlin,* of Plainfield, for appellant.

*Don F. Morton, Parr, Richey, Obremskey, Pedersen & Morton,* of Lebanon, *Robert V. Kixmiller, Shake, Lewis, Kixmiller & Sturm,* of Vincennes, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—The instant case was transferred to this office from the Second District on August 6, 1976, in order to lessen the disparity in caseloads among the Districts.

Petitioner-appellant Public Service Company of Indiana, Inc. (Public Service) appeals from an order of the Public Service Commission of Indiana (PSCI) which held that a prospective utility customer, O. Ames Company (Customer) should have its utility needs served by respondent-appellee Knox County Rural Electric Membership Corporation (Knox REMC).

We affirm.

## FACTS

The facts necessary for our disposition of this appeal are as follows: On March 17, 1939, the PSCI approved Knox REMC's articles of incorporation which included, among other things, a reasonable description of its intended service area. IC 1971, 8-1-13-4(b) (Burns Code Ed.).

In July, 1945, Public Service obtained the consent of Knox REMC to construct a distribution line into their service territory, and thereafter petitioned for and was granted by the PSCI a certificate of public convenience and necessity to con-

struct a primary distribution line into the service territory of Knox REMC.

On August 10, 1945, Public Service completed construction of a single phase primary distribution line as authorized by the PSCI.

In April, 1972, the Customer located within 750 feet of Public Service's distribution line, requested electric service, and is presently being served by Public Service pursuant to an agreement with Knox REMC.

Public Service has completed construction of a three phase lateral line from the primary distribution line built in 1945, in order to serve Customer, and Knox REMC has also constructed a three phase distribution line to the property of Customer.

## ISSUES

The issue presented in this appeal is whether Public Service possesses under the Rural Electric Membership Corporation Act[1] the right to serve customers at location originally described in Knox REMC's articles of incorporation, but also within 750 feet of a primary distribution line built by Public Service in 1945, pursuant to a certificate of public convenience and necessity issued by the PSCI.

## DISCUSSION AND DECISION

The Acts of 1935, ch. 175, § 4 currently found at IC 1971, 8-1-13-4(b) (Burns Code Ed.) which states the contents to be included in an REMC's articles of incorporation provides:

"* * *

(b) A reasonable description of the territory in which its operations are to be conducted, *and which shall not include* any incorporated city or town having a population in excess of fifteen hundred (1500) inhabitants at the time such articles are first approved by the Public Service Commission, or *any territory,* whether within or without any incorporated

---

1. IC 1971, 8-1-13-1 *et seq.* (Burns Code Ed.).

city or town, *already being served with energy by any public or municipally-owned utility.* (Our emphasis.)

*   *   *"

The statutory language found in IC 1971, 8-1-13-4(b), *supra,* "territory . . . already being served . . ." was first defined by Acts 1945, ch. 155, § 1 which provides in pertinent part:

"*   *   *

"(o) As used in this Act, the word 'territory' when modified by the phrase 'already being served with energy by any public or municipally owned utility' shall be construed (1) *to include such territory as may be served by secondary voltage service lines extending from primary voltage distribution lines existing on the effective date of this Act or thereafter built in accordance with the provisions of this act, and* . . . (Our emphasis.)

*   *   *"

In 1951, our legislature defined the phrase "secondary voltage service lines" in Acts 1951, ch. 162, § 1 as follows:

"*   *   *

(p) As used in this act, *the words 'secondary voltage service line' means a secondary distribution line, not exceeding seven hundred fifty feet in length,* and capable of service in accordance with rules and standards of service for electric utilities promulgated by the public service commission of Indiana. (Our emphasis.)

*   *   *"

In 1953, our legislature again defined the phrase "territory . . . already being served . . ." in Acts 1953, ch. 23, § 1. The language of the 1953 Act was incorporated in relevant part by IC 1971, 8-1-13-3(n) (Burns Code Ed.) and provides:

"*   *   *

(n) As used in this act [8-1-13-1—8-1-13-27], the word 'territory' when modified by the phrase 'already being served with energy by any public or municipally-owned utility' shall be construed (1) to include, in respect to rural territory, only such territory as is within 750 feet of a primary distribution line as existing on the effective date of this act *or thereafter built in territory that was not at the time of such building included in territory of any corpora-*

*tion organized, or admitted to do business, under this act, and . . . (Our emphasis.)*

*\* \* \*"*

Public Service contends that as a result of the certificate of convenience and necessity it acquired from the PSCI in July, 1945, which authorized it to construct a primary line into the service territory of Knox REMC, it automatically acquired the right to serve future customers who located within 750 feet of either side of this primary line. They continue by urging that this was the intention of our legislature as manifested by their definition of the phrase "territory . . . already being served . . ." in Acts 1945, ch. 155, § 1, *supra*.

The PSCI, in both its order dated May 30, 1974, and its order dated July 11, 1974, found as follows:

". . . We deem it very important to note that the only use of the phrase 'already being served with energy by any public or municipally owned utility' is that contained in Subsection B of IC 8-1-13-4. That section is only applicable to the territory to be included in the Articles of Incorporation of an REMC as originally submitted and approved or as later amended.

We therefore find that the phrase 'already being served with energy by any public or municipally owned utility' must be construed to apply to only the point and/or time of the original filing of the original Articles of Incorporation of an REMC or amendments to those Articles where an increase in territory is sought.

The stipulation of facts entered into between Petitioner and Respondent establishes that the territory in question was a part of the territory originally included in the original Articles of Incorporation of Respondent, Knox County REMC. Therefore, it is unnecessary for the Commission to interpret the effect of the 1945 definition of the phrase 'already being served with energy by any public or municipally owned utility' and/or either the 1951 or 1953 amendments thereto. . . ."

We are of the opinion that this finding by the PSCI is in harmony with the overall statutory scheme found in the REMC Act, IC 1971, 8-1-13-1, *et seq.*, *supra*.

The phrase "territory . . . already being served . . . " is

found only in IC 1971, 8-1-13-4(b) of the REMC Act. This statute deals exclusively with the contents which must be included in an REMC's articles of incorporation. There is nothing in this statute to indicate that if a non-REMC obtains a certificate of convenience and necessity from the PSCI, that it automatically obtains a 750 foot service corridor on each side of its primary distribution line by operation of law. Rather, we are of the opinion that IC 1971, 8-1-13-4(b), *supra*, governs only the conduct of REMC's currently incorporating, or thereafter, seeking to amend their articles of incorporation. Simply stated, an REMC's articles of incorporation cannot describe territory closer than 750 feet to an existing utility's primary line of distribution.

If a non-REMC wishes to encroach upon the service area of an REMC, our legislature has provided the proper vehicle in IC 1971, 8-1-13-18(b) (Burns Code Ed.) which states:

"(b) Except as provided in the last sentence of this subdivision (b) no person, copartnership or corporation not formed, or admitted to do business in this state, under this act, shall construct, own, manage or control any system within any territory included in that described in the articles of incorporation of, and to be served by, any corporation formed, or admitted to do business in this state, under this act, to any extent greater than such construction, ownership, operation, management, control or system actually exists on the effective date [March 9, 1935] of this act or on the date when such territory is first included in that to be served by such corporation formed, or admitted to do business in this state, under this act [8-1-13-1—8-1-13-27], whichever date is later, unless or until the following condition shall have been met, to-wit: *The one seeking such construction, ownership, operation, management or control shall first file, or cause to be filed, with the public service commission a petition therefor and obtain from such commission a declaration that public convenience and necessity require the respective construction, ownership, operation, management or control.* Before making such declaration, the public service commission shall ascertain whether the proposed construction, ownership, operation, management or control, is to be made or exercised within territory which any corporation formed, or admitted to do business in this

state, under this act, or any other corporation or public utility, is at that time, by any former approval, declaration or franchise by such commission, authorized to serve; if that be the fact, then unless the written consent of each such corporation or utility to the granting of such petition be filed with the commission, the commission shall hold a formal hearing upon such petition after giving the petitioner and each such corporation or public utility, whose territory may be affected, at least ten [10] days' written notice of the time, place or purpose of such hearing; the petitioner and each such corporation or utility shall be entitled to be heard and shall have process to enforce the attendance of witnesses. . . ." (Our emphasis.)

There is nothing in this statute to indicate that if the PSCI issue a certificate of convenience and necessity to a non-REMC utility a 750 foot corridor is *ipso facto* removed from the existing service territory of an REMC by operation of law.

Public Service makes several arguments why it believes that the PSCI erred in finding that the statutory amendments *supra,* defining the phrase "territory . . . already being served . . ." , were applicable only to an REMC originally organizing or amending its existing articles of incorporation.

First, we are cited to 26 I.L.E., Statutes, § 161, p. 358 which states *inter alia*:

"Amendments are to be construed together with the original act to which they relate as constituting one law, and as part of the original act, and also with other statutes on the same subject or relative subjects, whether in force or repealed. The provisions of the amendatory and amended acts are to be harmonized, if possible, so as to give effect to each, and leave no clause of either inoperative, although if there is an irreconcilable conflict the amendatory act will prevail and control. . . ."

We are not opposed to the above statement as a general proposition on statutory construction. However, we will not construe amendatory language of a statute in such a manner as to thwart what appears to us to be a clear legislative scheme. As we noted above, our

legislature has provided a vehicle by which a utility can operate within a previously defined service area of an existing REMC. IC 1971, 8-1-13-18(b), *supra*. We are unable to find any manifestation of legislative intent therein to indicate such a result as that advocated by Public Service. Statutes should be construed in such a manner as to give effect to their intended scope and purpose. *State* v. *Rice* (1956), 235 Ind. 423, 134 N.E.2d 219, 221.

The creation and realignment of utility service territories is a legislative, and not a judicial function. If we can give effect to a clear legislative scheme of utility territorial alignment, without the necessity of interpreting statutory language so as to bring about territorial realignment by implication, we feel obliged to do so. Questions concerning the policy or wisdom of statutory enactments are not for this court, but rather are proper concerns for the legislature. *Theta Kappa, Inc.* v. *City of Terre Haute* (1967), 141 Ind. App. 165, 226 N.E.2d 907, 912.

Public Service next argues that PSCI's construction and application of the phrase "territory . . . already being served . . ." is at odds with the definitions of that phrase provided by our legislature. Specifically, Public Service relies on the language found in Acts 1945, ch. 155, § 1, which defines "territory . . . already being served . . ." to include:

> ". . . such territory as may be served by secondary voltage service lines, extending from primary voltage distribution lines existing on the effective date of this act or *thereafter built in accordance with the provisions of this act,* . . ." (Our emphasis.)

Public Service then asks the question, "How can a line be built 'in accordance with the provisions of this act [REMC Act]', unless at the time of its building or approval it was included in REMC terirtory?" and answers "If a non-REMC utility contemplates building a line outside REMC territory, the REMC Act need never be invoked or applied."

We are of the opinion that the definition of "territory . . .

already being served . . ." as found in Acts 1945, ch. 155, § 1 can be logically construed with IC 1971, 8-1-13-4(b), *supra,* without by implication judicially legislating new service territories for public or municipally-owned utilities.

Accepting Public Service's contention as set forth in its brief and as urged in oral argument, that Indiana Statewide Rural Electric Cooperative, Inc. immediately after the REMC Act was passed absorbed all the territory in Indiana not then being served by public or municipally-owned utilities, the phrase, "or thereafter built in accordance with the provisions of this act," has an interpretation consistent with its obvious purpose: i.e., to govern what an REMC may include in its articles of incorporation. A reasonable interpretation of the quoted phrase is that it prevents a local REMC from including in its original or amended articles of incorporation territory which was originally duly allocated to Indiana Statewide REMC but had been committed to service from primary distribution lines of a public or municipally-owned utility, pursuant to IC 1971, 8-1-13-18(b), *supra,* before the local REMC sought to organize or amend its articles of incorporation. This is the result reached in IC 1971, 8-1-13-3(n), *supra,* which we are free to look to in determining legislative intent. *Bettenbrock* v. *Miller* (1916), 185 Ind. 600, 112 N.E. 771, 773.

Our legislature has recognized that there may be times when an existing REMC cannot advantageously, for one reason or another, serve a new customer located within it existing service area. Our legislature has provided an orderly mechanism by which this customer can be served. A utility may petition the PSCI for a certificate of convenience and necessity to serve this customer pursuant to IC 1971, 8-1-13-18(b), and then build a primary line or extend a secondary line to the customer's place of business. This legislative scheme provides an orderly procedure, encouraged by our Supreme Court in *Morgan County REMC* v. *Public Service Co. of Ind., Inc.* (1970), 253 Ind. 541, 255 N.E.2d 822,

824, whereby a utility can serve a customer who locates within territory that the PSCI has theretofore found serviceable by an existing REMC.

Public Service contends that the certificate of public convenience and necessity issued to it by the PSCI in July, 1945, authorized it to serve customers in addition to the customer named in the petition. In its order of July 11, 1974, the PSCI found that the customer named in Public Service's petition of July, 1945, was the only customer to which its 1945 order applied.

The 1945 PSCI order provided *inter-alia*:

> "The verified petition filed herein, together with the exhibits attached thereto, show that petitioner has certain distribution lines and facilities and is now rendering electric services in the immediate community in which the proposed distribution lines and facilities are to be constructed, owned, operated, managed and controlled by petitioner; that certain residents of said community do not now have electric service and have requested petitioner herein to extend its distribution lines and facilities and to serve said residents; that no other electric utility is rendering electric service along the course of said proposed rural electric extension nor in the territory described in said petition; that said rural electric extension is less than one mile in length; that petitioner proposes to build immediately specifically described lines, said lines being not more than one mile in length, *to serve the prospective customers named in said petition, said customers having contracted, prior to the filing of this petition with the Public Service Commission of Indiana, to take service; that petitioner is in a position to extend its distribution lines and facilities to serve said residents without unreasonable delay.*" (Our emphasis.)

This order refers to customers named in Public Service's petition. The petition named but *one* prospective customer. This being the case, we are of the opinion that the PSCI did not err in finding their 1945 order related only to the customer named in Public Service's petition.

We therefore hold that when the PSCI granted Public Service's petition for a certificate of public convenience and neces-

sity in July, 1945, to serve a customer named in the petition, it was not the intention of our legislature as expressed in the REMC Act, to allow as of 1945, Public Service to serve all future customers who locate within 750 feet of either side of their utility line, without the necessity of obtaining subsequent PSCI approval to serve said customers.

Order affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 354 N.E.2d 301.