In the Matter of the petition of Southern Indiana Gas and Electric Company for an order directing the Respondent to cease and desist from rendering electric service and constructing, operating, managing and controlling electric utility lines and facilities in certain rural territory in Spencer County, Indiana, and declaring the petitioner to be the holder and possessor of a valid certificate of convenience and necessity to exclusively render electric service and construct, operate, manage and control electric utility lines and facilities in said territory

**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, Appellant (Petitioner Below),**

v.

**SOUTHERN INDIANA RURAL ELECTRIC COOPERATIVE, INC., Appellee (Respondent Below).**

No. 2-277A48.

Court of Appeals of Indiana, Second District.

March 22, 1979.

Rehearing Denied May 7, 1979.

Fred P. Bamberger, Evansville, for appellant, Southern Indiana Gas and Electric Co.; Bamberger, Foreman, Oswald & Hahn, Evansville, of counsel.

Ralph P. Zoercher, J. David Huber, Zoercher, Becker & Huber, Tell City, Don F. Morton, Parr, Richey, Obremskey & Morton, Lebanon, for appellee.

ROBERTSON, Judge.

Petitioner-appellant Southern Indiana Gas & Electric Company (SIGECO) is appealing from a final order of the Public Service Commission (PSC) granting the respondent-appellee Southern Indiana Rural Electric Cooperative, Inc. (SIREC) the right to render electric service to the South Spencer School located in the Southwest Quarter of the Southwest Quarter of Section 17, Township 7 South, Range 6 West, Ohio Township, Spencer County, Indiana, and establishing boundaries between the two utilities in certain territory.

This controversy commenced when SIGECO discovered SIREC was preparing to render electric service to the school site, and was rendering electric service to others in territory which SIGECO believed to be their own. A series of proceedings before the PSC culminated in the order here on appeal.

A narrative of the salient findings and conclusions of the PSC order shows that SIGECO and SIREC are Indiana corporations duly organized under the appropriate acts for the purpose of distributing electric energy in Spencer County, Indiana, among other places. In May, 1904, the Spencer County Commissioners granted a right of way to the Evansville and Eastern Electric Railway to build an electric railway in Spencer County including ". . . the right to erect, construct, operate and maintain all poles and wires for the transmission of electricity . . . for such company and the public". The properties of Evansville and Eastern were eventually acquired by the Evansville and Ohio Valley Power Corporation (E & OV) in 1952. E & OV operated their system in portions of rural Spencer County without a certificate of necessity.

In October, 1954, SIGECO and E & OV petitioned the PSC for approval of a sale of E & OV to SIGECO. As a part of the hearing regarding the sale, a map, designated as "Exhibit A", was introduced into evidence which purportedly set forth the E & OV service territory to be acquired by SIGECO. The PSC approved the sale by its order of December 9, 1954. SIREC was not named a party nor did it intervene in the foregoing petition.

SIREC's original articles of incorporation did not include the quarter-quarter section here in dispute however, an amendment to its articles in 1945 approved by the PSC included all of Spencer County with four itemized exceptions.[1] Another SIREC articles of incorporation amendment in 1952, also approved by the PSC, included all of Spencer County with certain exceptions, one of which excepted any territory, either within or without a city or town, being served with electricity by a public utility as of March 9, 1949 [2] and/or being served by a public utility over lines constructed in accord with § 18 of the Rural Electric Membership Corporation Act.[3]

The PSC order then articulated the two issues for their resolution as:

"A) Which one of the two parties (SIGECO or SIREC) has the right to serve the South Spencer School in the SW¼ [of] the SW¼ of Section 17, Township 7 South, Range 6 West, Ohio Township, Spencer County, Indiana.

"B) To determine whether the line dividing the territory of SIGECO formerly owned by E & OV and the territory of SIREC is the line drawn on the map marked 'Exhibit [A]' and attached to SIGECO's petition as claimed by SIGECO or a line located 750' from E & OV primary distribution lines as they existed at the time SIGECO purchased E & OV assets in 1954 as claimed by SIREC."

The order then recites those documents and statutes relied upon in reaching a result. Included are the PSC order of December, 1954, approving the E & OV/SIGECO

---

1. Territory allocated to the Rockport Waterworks; specified cities and towns; metes and bounds description of those specified cities and towns; and, other territory served by SIGECO not in dispute here.

2. Probably a typographic error intended to read 1939.

3. IC 8–1–13–18 (Burns Code Ed.).

sale; SIREC's articles of incorporation; The Indiana Rural Electric Membership Corporation Act (IC 1971, 8–1–13–1 et seq. [Burns Code Ed.]) and especially that part thereof requiring an REMC to give a reasonable description of the territory to be served in its articles of incorporation (IC 1971, 8–1–13–4[b] [Burns Code Ed.]); and subsequent amendments to The Indiana Rural Membership Corporation Act.

The order then identifies SIREC's claim as arising from the foregoing statutes and documents and SIGECO's claim stemming from the Spencer County commissioner's grant in 1904.

The order continues by finding that "Exhibit A" as submitted in 1954 was not accurate; that the 1904 commissioners' grant did not constitute a franchise; that IC 1971, 8–1–2–23 (Burns Code Ed.) provides that lapsed powers or privileges are not revived by PSC approval of sales, etc. of franchises; that the PSC order of December, 1954 did not approve the transfer to SIGECO any rights not possessed by E & OV and that E & OV did not have a certificate of convenience and necessity and that the territorial boundaries were not established by the PSC in their December, 1954 approving the E & OV/SIGECO sale.

The order further states that the December, 1954 PSC order gave SIGECO the same powers to serve the area in question as E & OV possessed at that time and that the territory to be served is to be established in conjunction with the 1952 amendments to SIREC's articles of incorporation; and that the phrase "territory to be served" is to be defined by the statutes then in force, irrespective of whether or not they are consolidated in the actual language of the articles of incorporation. The PSC then identified, by location, the E & OV lines as they existed in 1952. The approval of the 1952 amendments to SIREC's articles of incorporation established a boundary as a line 750 feet from the then existing E & OV primary distribution lines as previously identified. In 1956 SIGECO built a distribution line to a pipeline company [near the disputed territory] and the line was reconstructed in 1959 to serve SIREC's Rose Hill metering point with SIGECO as well as continuing to serve the pipeline company.

At the risk of oversimplification the remainder of the PSC order held that SIGECO's lines adjacent to the property in dispute are not primary distribution lines eligible for the 750 foot corridor and, therefore, the school is located in SIREC's service territory.

█ The standard of review by this Court where there is an allegation that the PSC acted contrary to the evidence is to determine if substantial evidence exists in support of their findings. *L. S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), Ind.App., 351 N.E.2d 814. We may not weigh or analyze the evidence presented. *Public Service Commission v. Indiana Telephone Corp.* (1957), 237 Ind. 352, 146 N.E.2d 248.

█ Where there is an allegation that the PSC acted contrary to law we must review the administrative proceedings to see that the PSC remains within its jurisdiction and that it conforms to all relevant statutes, standards, and legal principles and that their order was not the product of the consideration, or the failure to consider, factors or elements improperly influencing a final decision. *Capital Improvement Board v. Public Service Commission* (1978), Ind. App., 375 N.E.2d 616, 630; *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308.

SIGECO raises as error almost every finding and order made by the PSC; however, two main alternatives emerge and these are whether the 1952 PSC approval of SIREC's amendment of articles establishes a prior right to serve the school or whether the 1954 PSC approval of SIGECO's acquisition of E & OV's assets establishes the territory as SIGECO's.

█ SIGECO, as outlined above, traces its territorial claims back to a 1904 franchise given by the county commissioners to SIGECO's predecessor, Evansville and Eastern Electric Railway, to construct an electric railway and incidentally provide electricity to the public. Using the standard of review given above, we do not think that PSC's findings concerning this grant were

contrary to the law or the evidence. The proposition that the franchise, as written, is to provide electrical service to the entire county is tenuous at best and it certainly is not a grant of exclusive service. Also, it is unclear whether the county commissioners had authority to provide such a grant as claimed by SIGECO and whether the 1913 public utility act affected any such grant. But perhaps the most obvious point is that if there was any exclusive county-wide grant given, it was lost long ago through non-use and by the entrance of SIREC in 1939 into the county. *Southern Gas and Electric Co. v. Indiana Stateway Rural Electric Co-op, Inc.* (1969), 251 Ind. 459, 242 N.E.2d 361.

PSC further noted that, under IC 8–1–2–83,[4] the 1954 approval of the sale and transfer of assets could not revive any lapsed or invalid franchise and thus, SIGECO can not rely on the 1954 approval by PSC as an affirmation of the 1904 grant as an exclusive county-wide franchise.

■ Indeed, SIGECO does not really argue that it has an exclusive county-wide franchise, rather it argues that the 1954 approval established a territory for SIGECO based on a map that had a territory line drawn on it submitted to PSC as part of the application. We have no difficulty in affirming that PSC in approving the 1954 transfer of assets did not mean to establish territorial boundaries. The reference to the map in the PSC order was incidental and there was no express statement of establishing territorial boundaries with SIREC. Further, there is evidence to show that the preparation of the map and the territory boundaries drawn on it by an E & OV employee was somewhat arbitrary and did not take into account already existing SIREC lines in that "territory".

4. IC 8–1–2–83 reads in pertinent part:
The approval of the commission of the sale, assignment, transfer, lease or encumbrance of a franchise or any part thereof under this section shall not revive or validate any lapsed or invalid franchise, or enlarge or add to the powers and privileges contained in the grant of any franchise or waive any forfeiture.

5. IC 8–1–13–3(n) reads in pertinent part:
(n) As used in this act [8–1–13–1—8–1–13–27], the word "territory" when modified by

We must further note that in 1952 SIREC had applied for and gotten approval for an express expansion of its territory by way of an amendment of its articles of incorporation. This expansion included all Spencer County with certain exceptions. Thus, any "territory" established by PSC in 1954, if there was any establishment at all, was subject to this earlier approval in 1952. This is because IC 8–1–13–18(b) provides the exclusive method for a non-REMC to encroach on REMC territory—this method being the obtaining of a certificate of public necessity and convenience. Said certificate has never been obtained.

■ We turn, then, to the 1952 amendment of SIREC's articles of incorporation, especially to the exceptions therein, to determine which utility has the right to serve the school. The amendment, as stated before, expanded the territory of SIREC to cover all Spencer County with the critical exception of "territory . . . already being served with energy by a public or municipally-owned utility." SIGECO argues that since the amendment of SIREC's articles did not specifically include the 1951 amended statutory definition of what this phase meant [IC 8–1–13–3(n)],[5] SIREC can not rely on its use to determine what it means. SIGECO further argues that the 1952 amendment did not establish territorial boundaries between the two utilities.

We agree with the PSC finding that, since SIREC included the phrase "territory already being served with electrical energy by any public or municipally-owned utility" in its 1952 amendment, it was not required to include the statutory language defining the phrase *in effect at that time* in order that the statutory definition determine the meaning of the phrase.

the phrase "already being served with energy by any public or municipally-owned utility" *shall be construed* (1) *to include, in respect to* rural territory, only such territory as is within 750 feet of a primary distribution line as existing on the effective date of this act or thereafter built in territory that was not at the time of such building included in territory of any corporation organized, or admitted to do business, under this act . . . . .

It seems basic to us that we follow this reasoning because SIREC is a creature of the REMC Act; it operates under the provisions of the Act and it was amending its articles according to specific statutory procedure [IC 8–1–13–22(3)] under the Act.

The articles of incorporation are, according to IC 8–1–13–4(b), to include a "reasonable description of the territory in which its operations are to be conducted and which shall not include . . . any territory . . . already being served with energy by any public or municipally-owned utility."

SIREC included this exact same language in its amendment of articles. What other meaning could we subscribe to the phrase than that explicitly stated in the definitional statute in effect at that time? It seems incomprehensible that we give the phrase a meaning that another public utility arbitrarily gives it two years later, even though neither SIREC nor PSC knew of this other meaning in 1952.

To some extent we agree with SIGECO's contention that the 1952 amendment did not establish the "boundaries" between SIREC and SIGECO. The 1952 amendment merely established *SIREC's* territory. *Public Service of Indiana, Inc. v. Knox County Rural Electric Membership Corp.* (1976), Ind.App., 354 N.E.2d 301. However, as stated before, an REMC is protected from encroachment from non-REMC utilities unless done under the provisions of IC 8–1–13–18(b).

 The PSC found that there was not a primary line of E & OV in 1952 within 750 feet of the school site, and since there is substantive evidence to support this finding, we will not disturb it.

We therefore affirm the findings of the PSC.

LYBROOK, P. J., and LOWDERMILK, J., concur.

ON PETITION FOR REHEARING

ROBERTSON, J.

Southern Indiana Gas and Electric Co. (SIGECO) has raised one point in its Petition for Rehearing that requires our consideration:

SIGECO has pointed out that in our opinion, now reported in 386 N.E.2d 1017 at 1021, ft. 5, we cited the *1953* amended version of IC 8–1–13–3(n) concerning territory. We should have cited the language of then 8–1–13–3(o)(1) and (p) which read as follows:

"(o) As used in this act, the Work "territory" when modified by the phrase "already being served with energy by any public or municipally owned utility" shall be construed (1) to include such territory as may be served by secondary voltage service lines extended from primary voltage distribution lines existing on the effective date of this act or thereafter built in accordance with the provisions of this act, and . . . .." [Acts 1945, Ch. 155, § 1.]

(p) As used in this act, the words, secondary voltage service line means a secondary distribution line, *not exceeding seven hundred fifty feet in length*, and capable of service in accordance with rules and standards of service for electric utilities promulgated by the Public Service Commission of Indiana." (Emphasis added.) [Acts 1951, Ch. 162, § 1.]

We are of the opinion that in spite of our error the decision of the court remains the same; therefore, the petition for rehearing is denied.