Kathy PROSSER, in her official capacity as Commissioner of the Indiana Department of Environmental Management, Appellant–Defendant,

v.

J.M. CORPORATION, Appellee–Plaintiff.

No. 49A04–9309–CV–355.

Court of Appeals of Indiana, Fourth District.

Feb. 28, 1994.

Pamela Carter, Atty. Gen., Beth H. Henkel, Deputy Atty. Gen., Indianapolis, for appellant-defendant.

John M. Kyle III, Brian J. Martin, Kiply S. Drew, Barnes & Thornburg, Indianapolis, for appellee-plaintiff.

Robert R. Clark, Scott R. Alexander, Lowe, Gray, Steele & Hoffman, Indianapolis, for amicus curiae.

RILEY, Judge.

## STATEMENT OF THE CASE

This is an appeal from a declaratory judgment and permanent injunction entered by the Marion County Circuit Court vacating Defendant–Appellant Indiana Department of Environmental Management's (IDEM) denial of Plaintiff–Appellee J.M. Corporation's (J.M.) landfill operating permit application. We affirm.

## ISSUES

1. Whether the trial court erred by entering declaratory judgment and injunctive relief before the Defendant–Appellant had exhausted all of its available administrative remedies; and

2. Whether the trial court erred when it entered a judgment on J.M.'s application for a permanent injunction and declaratory relief by interpreting IND.CODE 13–7–22–2(c) to require the Defendant–Appellant to show its net worth as of 1988 instead of its net worth for its immediate past fiscal year.

## FACTS AND PROCEDURAL HISTORY

J.M. first applied for a construction permit for the Mallard Lake Landfill in Madison County, Indiana, on April 9, 1981. On April 12, 1983, the Indiana State Board of Health approved J.M. Corporation's application for a construction permit.[1] That decision was appealed by the Killbuck Concerned Citizens Association and the Anderson Community School Corporation (Intervenors) to the Environmental Management Board (EMB) and

---

1. Approval of permits is now reviewed by IDEM.

the matter was referred to an Administrative Law Judge (ALJ).[2] The ALJ recommended that EMB uphold the Indiana State Board of Health's decision to approve J.M.'s construction permit application. On September 23, 1986, EMB adopted the ALJ's recommended order and issued a construction permit.

In late 1987, after completing construction of the initial fill area, J.M. applied to IDEM for an operating permit, and on December 12, 1988, the Commissioner approved the application. In the Notice of Decision the commissioner stated that J.M.'s operating permit would become effective in fifteen days "unless a petition for review and a petition for stay of effectiveness [were] filed within this fifteen (15) day period." (R. 425–437). The same Intervenors filed the required petition for review and—stay with the Board within the fifteen day period. The ALJ stayed the issuance of J.M.'s operating permit on May 9, 1989.

On March 20, 1990, Governor Bayh signed the new financial responsibility law (P.L. 107–1990, the substantive provisions of which are codified at I.C. 13–7–22–2), which became effective the same day. In Section 3 of P.L. 107–1990, which was not codified, the General Assembly defined the permit applicants that must comply with these new financial requirements. Section 3 states that the new Act applies to:

a permit application that was filed before the effective date of this act and that was granted by the commissioner of the department of environmental management before the effective date of this act if the commissioner's action in granting the permit was appealed to the solid waste management board and that appeal is pending on the effective date of this act.

By a letter dated May 4, 1990, the commissioner informed J.M. that J.M.'s operating permit was "granted" and "would be issued" within the meaning of the statute as of 1988 when she approved the operating permit application. Thus, the commissioner declared that "in order to allow IDEM to complete the action on the Mallard Lake permit application," J.M. must submit "a statement of financial position prepared in accordance with I.C. 13–7–22–2(c) showing that at the end of the calendar year or fiscal year 1987 (the year immediately preceding the issuance of the Mallard Lake permit), [J.M.] had a positive net worth of at least $250,000.00 . . . ." (R. 448–49).

J.M. objected to the commissioner's interpretation and on November 14, 1991, J.M. submitted its most recent certified financial statement that showed its net worth of more than $250,000 at the end of his last fiscal year, March 31, 1991.

In a letter dated March 9, 1992, the commissioner denied J.M.'s application for an operating permit for the Mallard Lake Landfill because J.M. did not "submit the information pertaining to net worth for the calendar year 1987." (R. 397–398, 479–480).

On March 24, 1992, J.M. filed a petition for review of the commissioner's decision denying its application for an operating permit. On February 2, 1993, the ALJ issued his recommended order, recommending that the commissioner's denial of J.M.'s operating application should be upheld.

On February 18, 1993, J.M. Corporation filed its Verified Complaint for Declaratory Judgment and Injunctive Relief in the Marion Circuit Court. After a trial on the merits, the trial court rejected the commissioner's argument that the court lacked subject matter jurisdiction under the doctrine of exhaustion of administrative remedies. The court then granted the complaint for declaratory judgment and permanent injunctive relief and remanded the matter to IDEM after vacating the denial of J.M.'s permit application.

## STANDARDS OF REVIEW

One of the issues presented to the trial court was whether J.M. failed to exhaust its administrative remedies before bringing its action for declaratory judgment and injunctive relief. The general rule is that no one is entitled to judicial relief for an alleged or threatening injury until the prescribed administrative remedy has been exhausted; however, such rule should not be applied

2. The EMB is the predecessor of the Solid Waste Management Board.

mechanistically. *Wilson v. Board of Indiana Employment Sec. Division* (1979), 270 Ind. 302, 385 N.E.2d 438, 441, *cert. denied* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. Exhaustion of administrative remedies is not required if administrative procedures are incapable of answering the question presented by the party's claims, as when the question is beyond pale of the agency's competency, expertise, and authority. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140, 144, *reh'g denied.*

■ The second issue discussed below is statutory construction. In construing an ambiguous statute, a court may "look to ... the object of the statute," *Walgreen Co. v. Gross Income Tax Division* (1947), 225 Ind. 418, 75 N.E.2d 784, 786, and consider "the goals sought to be achieved and the reasons and the policy underlying (the) statute." *Simon v. Auburn Bd. of Zoning Appeals* (1988), Ind.App., 519 N.E.2d 205, 211. *See also Public Service Co. v. Knox County REMC* (1976), 170 Ind.App. 576, 354 N.E.2d 301, 305, *reh'g denied.* It is settled in Indiana that a court must "construe statutes to prevent ... a result the legislature, as a reasonable body, could not have intended." *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823.

## DISCUSSION AND DECISION

### I. Exhaustion of Administrative Remedies

■ The trial court has properly exercised subject matter jurisdiction by holding that the facts of this case fall within an exception to the doctrine of exhaustion of administrative remedies. Under our laws, a person may file a petition for judicial review only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review. I.C. 4–21.5–5–4(a). With respect to declaratory judgment actions, courts are generally reluctant to grant declaratory relief if the result is to by-pass available administrative procedures. *Scales v. State* (1990), Ind. App., 563 N.E.2d 664, 666–667. In such actions, courts must consider four relevant factors in determining whether a person may by-pass available administrative remedies:

1. whether use of the judicial remedy will most completely resolve all of the issues between the parties;

2. whether the available administrative remedy is adequate;

3. whether declaratory relief is necessary to prevent irreparable harm; and

4. the extent of unnecessary delay resulting from allowing declaratory relief.

*Scales,* 563 N.E.2d at 667 (citing *Thompson v. Medical Licensing Board* (1979), 180 Ind. App. 333, 389 N.E.2d 43, 51, *reh'g denied, trans. denied* (1980), *cert. denied,* 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160).

■ In weighing the factors listed above, we agree with the trial court exercising its subject matter jurisdiction and determining the intent or meaning of I.C. 13–7–22–2. Courts, not administrative agencies, are the entities with the expertise to resolve questions of statutory construction. *Bailey v. Menzie* (1987), Ind.App., 505 N.E.2d 126, 128 ("(c)onstruction of doubtful statutes is a judicial function, which the courts alone must perform"). This decision should have no disruptive effect on the administrative process. As this court noted in *County Dept. of Pub. Welfare v. Deaconess Hospital* (1992), Ind. App., 588 N.E.2d 1322, 1327, *trans. denied:*

a court owes no deference to any agency's conclusions of law, because '(l)aw is the province of the judiciary.' *Board of Trustees of Pub. Employees' Retirement Fund of Ind. v. Miller* (1988), Ind., 519 N.E.2d 732, 733. When the facts are undisputed, and the question is whether they lead to a certain conclusion, the case presents a question of law, and the courts need not defer to any agency decision making. *Id.*

■ J.M. also presented evidence which demonstrated that it has suffered harm to its business and any further delay could keep them from being considered in future waste treatment plans. Declaratory and injunctive relief is the only remedy that will protect J.M. from incurring further irretrievable losses and that will alleviate further unnecessary delay. The Commissioner's interpretation of the statute has meant that J.M. has not been able to operate its business and derive any profit from the landfill.

Exhaustion of administrative remedies was recently discussed by this court in *Indiana Department of Environmental Management v. Chemical Waste Management of Indiana, Inc.* (1992), Ind.App., 604 N.E.2d 1199, *trans. denied* (*Chemical*), when Chemical had an application pending before the Commissioner of IDEM. Chemical filed a complaint in the Marion County Superior Court saying that the Commissioner had misinterpreted the Good Character Law (I.C. 13–7–10.2–1) by applying it retroactively. The Marion County Superior Court granted an injunction barring IDEM from rejecting Chemical's application on the basis of that statute.

This court rejected IDEM's argument that Chemical needed to exhaust further administrative remedies. We reiterated our supreme court's four factors mentioned above. We noted that the issue presented was purely legal, *Id.* at 1203, as is true in this case. We also observed that the lawsuit's effect on the administrative process was "minimal." Accordingly, this court held that the trial court did have subject matter jurisdiction over Chemical's action for declaratory and injunctive relief. We are satisfied that the reasoning and the result set forth in *Chemical* adequately control the exhaustion of administrative remedies issue presented herein.

The trial court's ruling on the exhaustion of administrative remedies issue is reversible only if it can be shown that it abused its discretion in applying the four *Chemical* factors. 604 N.E.2d at 1203. *Scales*, 563 N.E.2d at 664, 667. Here, as in *Chemical*, the commissioner has failed to establish that the trial court abused its discretion when it allowed J.M. to seek declaratory relief.

## STATUTORY INTERPRETATION

The second issue presented in this case is a question of statutory interpretation. When the General Assembly adopted I.C. 13–7–22–2(c) in 1990, the intent was to ensure that parties building and operating landfills were financially sound. In order to achieve this objective, the statute requires that before a permit may be granted, an applicant must prove its net worth is at least $250,000 "at the end of the calendar year or fiscal year immediately preceding the year in which the permit would be issued...." J.M. had applied for an operating permit and notice of the approval of the application was sent to J.M. in the form of a letter dated December 12, 1988, stating that IDEM's approval of J.M.'s operating permit would become effective in fifteen days unless a petition was filed seeking Board review of the Commissioner's action. A petition for review was filed by the Intervenors within the 15 day period specified in the Commissioner's December 12, 1988, letter. As a result, the Commissioner's decision to approve J.M.'s operating permit application never became effective. The ALJ stayed the issuance of the permit and J.M. never received permission to begin the landfilling operation at the Mallard Lake Landfill.

By a letter dated May 4, 1990, the commissioner advised J.M. that she construed I.C. 13–7–22–2(c) to mean that J.M.'s operating permit was "granted" and "issued" on December 12, 1988. The Commissioner asked J.M. to supply a financial statement verifying its net worth to be $250,000 or more in 1987, the year "immediately preceding" 1988, the year the appellants claim the permit was granted. We conclude that to follow this argument to its logical conclusion would be to sabotage the legislative objective. No public interest would be served by having J.M. prove its net worth was greater than $250,000 six or seven years before an effective operating permit may be granted. Using this interpretation of the statute would mean that J.M. could have a net worth of millions in 1987, insolvent today, and still be issued a permit. The trial court correctly interpreted the purpose of the law, which is to help ensure that landfill operators have a minimum net worth at the end of the calendar year or fiscal year immediately preceding the year in which their permit would be issued. Because the ALJ stayed the issuance of the permit to allow the objection of the intervenors, the permit has not yet been granted and issued. An operating permit has not been issued because the action was stayed. The permit was not "granted" or "issued"; thus, J.M. was not required to submit a financial statement from 1987.

██ The obvious purpose of the statute is to protect the citizens of Indiana by ensuring that landfill operators have a certain financial stability to be able to maintain and operate a landfill responsibly. The only way to construe this statute, then, is to make the financial report as close in time as possible to the date the landfill operations begin which is "the end of the year immediately preceding the year in which the permit would be issued." I.C. 13–7–22–2(c).

## CONCLUSION

We hold that the trial court did not err when it entered declaratory judgment and permanent injunctive relief vacating IDEM's denial of J.M.'s landfill operating permit application.

Affirmed.

MILLER and ROBERTSON, JJ., concur.